**LEAH C. LIVELY, OSB #962414**
leahlively@dwt.com
**SARAH E. AMES, OSB #132675**
sarahames@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

**PORTIA R. MOORE** (admitted *pro hac vice*)
portiamoore@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 757-8089
Facsimile: (206) 757-7089

Attorneys for Defendant
Wells Fargo Bank, N.A.

## IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

#### AT PORTLAND

| | |
|---|---|
| **DUKE TRAN,** | Case No. 3:15-cv-00979-BR |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF ERIC FRUITS DURING LIABILITY PHASE OF THE TRIAL OR IN THE ALTERNATIVE REQUEST FOR HEARING UNDER FED. R. EVID. 104** |
| **WELLS FARGO BANK, N.A.,** | |
| Defendant. | |

Page 1 – DEFENDANT MOTION TO EXCLUDE TESTIMONY AND REPORT OF ERIC FRUITS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4826-1779-3114v.2 0088288-000066

## LR 7-1(A) CERTIFICATION

Pursuant to LR 7.1(A), Leah C. Lively and Portia R. Moore, counsel for defendant Wells Fargo Bank, N.A., certify that they conferred by telephone with counsel for plaintiff Duke Tran. The parties were unable to resolve the issues raised by this motion.

## MOTION

Pursuant to Federal Rules of Evidence 401, 403 and 702, Wells Fargo Bank respectfully moves this Court for an order excluding the testimony of plaintiff's witness Dr. Eric Fruits during the liability portion of the trial in this matter. This motion is supported by the following Memorandum of Points and Authorities and the pleadings filed in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION:

The Court should exclude Dr. fruits from testifying during the liability phase of trial for four reasons: (1) Dr. Fruits was not timely disclosed as a liability expert (and never listed on Plaintiff's initial disclosures), but only disclosed as a damages expert; (2) the proffered testimony of Dr. Fruits does not require expertise and is cumulative of employee-witnesses already testifying; (3) Dr. Fruits written report did not include the opinions for which Plaintiff now seeks to have him testify; and (4) Dr. Fruits proffered testimony as to how Wells Fargo "stays profitable" is a damages issue and should be excluded from the liability phase of trial.

## II.    FACTUAL BACKGROUND:

Key facts:

- Plaintiff served Initial Disclosures on August 29, 2016, and Amended Initial Disclosures on May 8, 2017. Neither pleading named Dr. Fruits as a person likely to have discoverable information on the issue of liability.

- Based upon a joint motion of the parties, *expert liability disclosures* were due *May 5, 2017*, with *expert damages disclosures* due after summary judgment, on *September 8, 2017*. Dkt. Nos. 59, 63, 116.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

- Plaintiff failed to designate Dr. Fruits as a liability expert on or before May 5, 2017, but instead furnished his report pursuant to the Expert damages deadline on ***September 8, 2017***.[1] Declaration of Leah C. Lively, ¶ 2.

- Dr. Fruits report, **dated September 8, 2017**, states he is opining "as to Wells Fargo's role in the mortgage servicing industry and punitive damages associated with Defendant's alleged actions[,]" and specifically notes that he has "…no opinions regarding liability in this matter" and that his "analysis and conclusions describe some of the economic logic behind punitive damages **and are intended to assist the jury by providing a portion of the framework to evaluate punitive damages.**" *Ex. 1.* pp. 5-6.

- Wells Fargo deposed Dr. Fruits as a damages expert on October 3, 2017, as a damages expert.[2] Lively Decl., ¶¶ 6, 7.

- On October 26, 2017, this court bifurcated the damages phase from the liability phase of trial.

- On **January 23, 2018**, for the first time, Plaintiff listed Dr. Fruits as a proposed witness during the liability phase of trial. Lively Decl., ¶ 3. It was not until **January 25, 2018** (less than 30 days before trial), the plaintiff disclosed the intended purpose of his testimony:

  > Fruits would testify: Wells Fargo is generally recognized as the largest mortgage loan originator in the U.S. In 2016, Wells Fargo originated approximately $249 billion of mortgage loans and comprised approximately 13 percent of the mortgage loan origination market. Wells Fargo is also generally recognized as the largest mortgage loan servicer in the U.S. In 2016, Wells Fargo serviced a portfolio of approximately $1.6 trillion mortgage loans.

Lively Decl., ¶ 4.

---

[1] Dr. Fruits' report is attached as Exhibit 1 to the Declaration of Leah C. Lively, filed herewith.

[2] Excerpts from the deposition of Dr. Fruits are attached as Exhibit 2 to the Lively Declaration as "Fruits Depo."

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Dr. Fruits—disclosed only as a damages expert—should not be allowed to testify during the liability phase of trial and his report should not be allowed in as evidence during this phase. If the Court is not inclined to exclude Dr. Fruits on the basis of this Motion, Defendant requests the Court conduct a hearing pursuant to Fed. R. Evid. 104 prior to Dr. Fruits testifying.

## III.    ARGUMENT

### A.    Dr. Fruits Was Not Disclosed As A Liability Expert, But Instead As A Damages Expert; Tran Should Not Be Allowed To Ignore The Court's Scheduling Order And Switch Phases Of Expert Testimony On The Eve Of Trial

Dr. Fruits' testimony (and report) should be excluded from testifying during the liability phase of trial because he was not timely disclosed as a liability expert.  Instead, he was disclosed as a damages expert *four months after expert liability disclosures were due*.  Plaintiff should not be allowed to play hide the ball with the Court's scheduling order and back door Dr. Fruits' proffered damages testimony into the liability phase of trial.  *See Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005) (plaintiff's attempt to disregard a deadline for expert disclosure was not harmless even though trial was still months away and emphasizing that "[p]arties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence."); *Quevedo v. Trans–Pacific Shipping, Inc*., 143 F.3d 1255, 1258 (9th Cir. 1998) (upholding exclusion of untimely expert testimony submitted by plaintiff in opposition to summary judgment).

The conclusion that exclusion is appropriate here is bolstered by Plaintiff's failure to list Dr. Fruits as a person with knowledge in his initial disclosures (or in his May 17, 2017, supplement).  *Design Strategy Inc. v. Davis*, 469 F.3d 284, 295 (2nd Cir. 2006) (upholding the lower court's finding that "severe sanctions, [including exclusion] were warranted for [the party's] failure to abide by Rule 26(a)(1)(c)" in failing to supplement initial disclosures); *Troknya v. Cleveland Chiropractic Clinic*, 280 F.3d 1200, 1205 (8th Cir. 2002) (affirming

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

court's exclusion of defendant's witnesses that appeared on its trial exhibit list but were not listed in initial disclosures, even if names of witnesses were referenced somewhere during discovery process).

**B.    Dr. Fruits Should Be Excluded From Testifying During The Liability Phase Because His Testimony Is Cumulative And Not The Proper Subject Of Expert Testimony**

Plaintiff, as the proponent of expert testimony, must establish its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993) (party seeking to admit purported expert must demonstrate each element of admissibility by a preponderance of the evidence); *U.S. v. 87.89 Acres of Land More Or Less in the County of Merced,* 530 F.3d 899, 904 (9th Cir. 2008) (proponent of expert testimony "has the burden to establish its admissibility" and affirming exclusion of expert where proponent failed to meet this burden).[3]  The admissibility of expert testimony in federal court is governed by Fed. R. Evid. 702, which states:

> If scientific, ***technical, or other specialized knowledge*** will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

(Emphasis added).  The Supreme Court has held that Fed. R. Evid. 702 require district courts to perform a "gate-keeping function" before admitting expert testimony. *Daubert,* 509 U.S. at 589. This is to ensure that expert testimony based on scientific, technical, and other specialized knowledge "is not only relevant, but reliable." *Id.*   In *Kumho Tire Co. v.*

---

[3] If Plaintiff is not calling Dr. Fruits as an expert, then he is simply a lay witness.  But, because Dr. Fruits have never worked at Wells Fargo, any testimony that he would offer lacks foundation or is hearsay, and should be excluded on that basis, independent of Plaintiff's failure to list him in his initial disclosures. *See* FRE 801 and 608.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Carmichael*, 526 U.S. 137, 147-48 (1999), the Court clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science.

The law is well established that in order to be admissible, expert testimony must be relevant, reliable, and it must relate to some form of specialized knowledge. *Daubert,* 509 U.S. at 589; *Guidroz-Brault Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001). Relevance is decided by determining whether the expert's testimony is helpful to the jury. *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1073 (9th Cir. 2003). Expert testimony is not helpful to a jury, and thus not relevant, when it addresses an issue that is within ***"the common knowledge of the average layman."*** *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001), amended by 246 F.3d 1150 (9th Cir. 2001) (emphasis added). Dr. Fruits' proposed testimony should be excluded because it fails to meet several of these threshold evidentiary requirements.

> **1. Dr. Fruits' proposed testimony should be excluded because it is neither relevant nor reliable; it is within the common knowledge of the average adult person and is cumulative of employee-witness testimony**

Dr. Fruits' is an economist with a specialty is real estate appraisal. His proposed "expert" testimony in this case has nothing to do with complicated economics analysis or statistical modelling. Instead, his proposed testimony boils down to Wells Fargo being a big bank in the mortgage business. This is common knowledge within the general adult public and not the subject of expert testimony. *See Hinkle v. LaRoche*, 2008 WL 5453779, (ED WA 2012) ("Expert witness testimony is proper under Rule 702 only if it illuminates matters not within the common knowledge of the average juror[,]" *citing U.S. v. Seschille*, 310 F.3d 1208, 1212 (9th Cir. 2002). "If the issues in the case are ones that jurors can understand and evaluate through their own knowledge and experience, expert testimony is not needed and should be excluded." *Hinkle, citing Salem v. U.S. Lines Co.*, 370 U.S. 31, 35, 82 S. Ct. 1119, 8 L. Ed. 2d 313 (1962).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main • (503) 778-5299 fax

To be sure, Dr. Fruits' entire basis of knowledge about Wells Fargo is—not one of economics expertise—but based on internet searches of publically available information that anyone could perform:

> Q.   Let's turn to page 7, and I'm particularly interested in the two paragraphs in this section where you talk specifically about Wells Fargo and -- you touched on it a minute ago -- Wells Fargo's position in the market as an originator and a servicer.  Just so I'm clear, you cite these -- you footnote and cite a couple of articles from Mortgage Daily, I think, from the internet.
>
> A.   Yes.

Fruits Depo., 32:24-33:7.

> Q.   And these articles, obviously, on the web, they're publicly available, could be looked up by anyone?
>
> A.   Yes.

Fruits Depo., 34:5-8.

> Q. You mentioned, I think, in both these paragraphs that Wells Fargo is generally recognized as the largest originator, the largest servicer. Apart from the information that you just described to me -- which I appreciate -- did you do anything else to confirm that Wells is generally recognized?
>
> A. Well, again, you've got the information from Mortgage Daily, which ranks Wells Fargo and places it in that ranking.  You have the statement from Wells Fargo regarding origination.  I can't recall if they made a statement about being the largest servicer in the country. **And then if I recall, you know, several of the articles that I cite, the articles will have some sort of, you know, throwaway line that says, Wells Fargo, the largest mortgage servicer.  I don't recall specifically where I saw it.  But it's one of the things, as you're looking through the internet and you're seeing Wells Fargo, that's typically -- that seems to be a moniker that's attached to it.**

Fruits Depo., 35:24-36:18 (emphasis added).  Regurgitating "throwaway" information based on internet articles is not a skill that requires expertise or demands expert testimony.  *See Dep't of Toxic Substances Control v. Technichem, Inc.*, 2016 WL 1029463, *1 (N.D. Cal. Mar. 15, 2016) (excluding expert opinion in part because expert "often does no more than regurgitate information given to him by other sources").

Page 7 – DEFENDANT MOTION TO EXCLUDE TESTIMONY AND REPORT OF ERIC FRUITS

Finally all of the Wells Fargo employee/witnesses can testify that Wells Fargo is a bank and that its business includes mortgage lending and servicing. Dr. Fruits' testimony about what he gleaned from the internet cannot properly be deemed "expert" testimony, and is cumulative of the testimony that will be provided by those witnesses who actually worked for Wells Fargo. He should be excluded as a witness during the liability phase of trial.[4]

> **2.    Dr. Fruits' testimony is unreliable because he is not qualified to be an expert on Wells Fargo's place in the market.**

Fruits' report is unreliable because he admits he has no experience valuing banks. Fruits Depo., 5:20-25; 16:13-21. *See, e.g., Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1195 (10th Cir. 1992) (affirming exclusion of expert testimony where witness had no experience representing entities at issue in case); *Giddings v. Bristol-Meyers Squibb Co.*, 192 F. Supp. 2d 421, 425 (D. Md. 2002) (excluding testimony of chemist because he was not a doctor, toxicologist, or pathologist and could not opine that gel was harmful to health).

> **3.    Dr. Fruits' testimony is unreliable and should be excluded because it is based on information from the wrong time period.**

Plaintiff represents that he wants to call Dr. Fruits to establish motive as to while Wells Fargo would have retaliated against him in 2014. However, the articles that Dr. Fruits relies on for purposes of his statements of Wells Fargo's size and place in the mortgage market are from April and September 2016. *See* Fruits Report, p. 7, n.1-3. *See, e.g., Hayes Oyster Co. v. Dulcich*, 199 Or. App. 43, 57, 110 P.3d 615, 624 (2005) ("What would constitute a penalty in relation to a defendant's wealth is properly measured at the time the penalty is assessed, not at the time the tortious action occurred—much less at the time that other defendants' punitive

---

[4] At this juncture, Tran has only disclosed Fruits as a witness on liability. Because this is fundamentally at odds with the purpose for which Fruits was originally disclosed – to testify regarding punitive damage – Wells Fargo anticipates Tran may attempt to later amend the proffered testimony. Wells Fargo specifically reserves the right to challenge Fruits's testimony during any punitive damage phase. Based on current disclosures, the issue is not yet ripe and Wells Fargo has not briefed its objections.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

liability (or here, lack thereof) was established.") (internal quotation omitted).  Wells Fargo's place in the market in 2016 could not have been a basis for retaliation in 2014.  Dr. Fruits' testimony is irrelevant and would confuse the jury.

      **C.**    **Dr. Fruits' Testimony Should Be Excluded Because There is No Evidence That the Decision-Makers Are Aware of Wells Fargo's Loan Overall Portfolio Size and a Company's Size is Not Motive for Retaliation**

Tran's theory is that Wells Fargo had a motive to retaliate against Tran because it is a big bank and has a large loan portfolio.  This argument should be rejected for two reasons.  First, Tran has no evidence showing that any decision-maker is aware of the specific size of Wells Fargo's loan servicing and loan origination portfolios.  Thus, these figures could not form the basis of any alleged retaliatory actions and are irrelevant to the claim before the jury.  Dr. Fruits' testimony regarding the size of Wells Fargo's loan portfolios should be excluded under Rule 401.

Second, the fact that Wells Fargo is a large bank is not evidence of a motive for retaliation.  Under Tran's theory, any large or successful corporation would have a motive to retaliate.  This is not the law.  Wells Fargo was unable to locate any authority stating that a company's size can be admitted as evidence of a motive for retaliation.  The fact that a company is big should not be considered as a replacement for evidence of a retaliatory motive.  By way of analogy, in a trial for a bank robbery case, the prosecutor does not introduce evidence of the amount of money in the vault or the amount in each teller's till.  How much money the bank has is not evidence of the robber's motive.  Similarly here, how many loans Wells Fargo services is not evidence of a motive to retaliate against Tran for his alleged whistleblowing.  Rather, Tran impermissibly seeks to prejudice the jury against Wells Fargo by admitting irrelevant information and arguing that because Wells Fargo is big, it must have had a motive to retaliate.  This testimony should be excluded under Rules 401 and 403.  *See, e.g., Norwood v. Children & Youth Servs., Inc.*, 2012 WL 12882757, at *2 (C.D. Cal. July 27, 2012) ("***evidence of a defendant's wealth can induce fact finders to abandon their objectivity and return a verdict***

Page 9 – DEFENDANT MOTION TO EXCLUDE TESTIMONY AND REPORT OF ERIC FRUITS

*based on passion and prejudice*") (emphasis added); *Lin v. Darren Beavers, Hi-Tech Testing Serv., Inc.*, 2009 WL 361247, at *1 (W.D. Ark. Jan. 30, 2009) ( "evidence of both Defendants' financial conditions should not be presented to the jury during the compensatory phase of the trial. While evidence of both Defendants' net worth is relevant to issues concerning the claim for punitive damages...*this evidence could have a prejudicial or confusing effect on jury deliberations concerning liability and compensatory damages*.") (citation omitted; emphasis added).

## IV.    CONCLUSION

For all the reasons set forth above, the Court should exclude the proposed liability testimony of Dr. Eric Fruits as irrelevant, unreliable, and cumulative and not the proper subject of expert testimony.  Evidence of Wells Fargo's economic worth may become admissible in the event a punitive damage phase of this trial is necessary – but not until then.


DATED this 26th day of January, 2018

**DAVIS WRIGHT TREMAINE LLP**

By s/ Leah C. Lively
    **Leah C. Lively, OSB # 962414**
    leahlively@dwt.com
    **Sarah E. Ames, OSB #132675**
    sarahames@dwt.com
    **Portia Moore, admitted** *pro hac vice*
    portiamoore@dwt.com

Attorneys for Defendant Wells Fargo Bank, N.A.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax